Andrew Kimble
Biller & Kimble, LLC
8044 Montgomery Rd., Suite 515
Cincinnati, Ohio 45236
(*pro hac vice*)
614-340-4620
akimble@billerkimble.com
513-715-8711

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Madeline Cota,<br>*On behalf of herself and those similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>Bacus Foods Corp.; Brandt Bacus; Jared Bacus;<br><br><br>Defendants. | Case No. CV-_____-PHX-_____<br><br><br>CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY TRIAL DEMAND<br><br>Violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq.; Arizona Minimum Wage Act ("AMWA"), A.R.S. §23-250, *et seq.*, Arizona statute A.R.S. §23-362, *et seq.,* and Arizona statute A.R.S. 23-371, *et. seq.*, |

DATED this 15th day of January, 2024.


 s/Andrew Kimble
Andrew Kimble
Attorney for Plaintiff

1.      Plaintiff Madeline Cota, on behalf of herself and similarly situated individuals, brings this action against Bacus Foods Corp., Brandt Bacus, and Jared Bacus ("Defendants") based on Defendants' compensation and reimbursement policies at the Defendants' Jimmy John's sandwich stores.

2.      Defendants own a Jimmy John's franchise that operates stores in Arizona, Kansas, Colorado, and Nebraska (the "Bacus Jimmy John's stores").

3.      Plaintiff and the delivery drivers she seeks to represent are Defendants' delivery drivers.

4.      Defendants have repeatedly and willfully violated the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. (the "FLSA"), and Arizona Minimum Wage Act ("AMWA"), A.R.S. § 23-363, *et seq*., and the Arizona Wage Payment Law ("AWPL"), A.R.S. § 23-350, *et seq.,* by failing to adequately reimburse delivery drivers for their delivery-related and other work-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wage for all hours worked.

**I.    Jurisdiction and Venue**

5.      Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

6.      Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

7.      Venue in this Court is proper under 28 U.S.C. § 1391(b) because all Defendants are residents of the State of Arizona.

**II.    Parties**

**Plaintiff**

**Madeline Cota**

8.    Plaintiff Madeline Cota worked for Defendants in Tucson, Arizona.

9.    Plaintiff is an "employee" of Defendants as defined in the FLSA and the AMWA.

10.    Plaintiff has given written consent to join this action.

**Defendants**

11.    Plaintiff seeks to hold liable any individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons who acts or has acted directly or indirectly in the interest of the Bacus Jimmy John's stores in relation to Plaintiff and similarly situated delivery drivers.

12.    Defendants Bacus Foods Corp., Brandt Bacus, and Jared Bacus make up all or part of the organized group of persons who acts or has acted directly or indirectly in the interest of the Bacus Jimmy John's stores in relation to Plaintiff and similarly situated delivery drivers.

**Bacus Foods Corp.**

13.    Defendant Bacus Foods Corp. is a domestic corporation with its principal place of business at 1404 S. Longmore, Mesa, Arizona 85202.

14.    Upon information and belief, Bacus Foods Corp. owns and operates Jimmy John's sandwich stores in Arizona, Kansas, Colorado, and Nebraska.

15.    Bacus Foods Corp. is owned and operated by Brandt Bacus and Jared Bacus.

16.    Bacus Foods Corp. is one of the entities that has entered into a franchise agreement with Jimmy John's to operate the Bacus Jimmy John's stores.

17.     Bacus Foods Corp. is the entity that appears on Plaintiff's paystubs for work she completed for Defendants.

18.     Bacus Foods Corp. may command where, when, and how much labor is performed by the delivery drivers at the Bacus Jimmy John's stores.

19.     Bacus Foods Corp. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

20.     Upon information and belief, Bacus Foods Corp. applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

21.     Bacus Foods Corp. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

22.     At all relevant times, Bacus Foods Corp. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

23.     Bacus Foods Corp. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

24.     At all relevant times, Bacus Foods Corp. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

25.     Bacus Foods Corp.'s gross revenue exceeds $500,000 per year.

**Brandt Bacus**

26.    Brandt Bacus is an owner and operator of Bacus Foods Corp., (the "Entity Defendant").

27.    Brandt Bacus is a person who has entered into a franchise agreement with Jimmy John's to operate the Bacus Jimmy John's stores.

28.    Brandt Bacus is the president and CEO of the Entity Defendant.

29.    Brandt Bacus may command where, when, and how much labor is performed by the delivery drivers at the Bacus Jimmy John's stores.

30.    Brandt Bacus is individually liable to the Bacus Jimmy John's stores delivery drivers under the definitions of "employer" set forth in the FLSA and Arizona law because he owns and operates the Bacus Jimmy John's stores, serves as a manager of the Entity Defendant, ultimately controls significant aspects of the Bacus Jimmy John's stores' day-to-day functions, and ultimately has control over compensation and reimbursement of employees.  29 U.S.C. § 203(d).

31.    At all relevant times, by virtue of his role as owner and operator of the Entity Defendant, Brandt Bacus has had financial control over the operations at each of the Bacus Jimmy John's stores.

32.    At all relevant times, by virtue of his role as owner and operator of the Entity Defendant, Brandt Bacus has a role in significant aspects of the Bacus Jimmy John's day to day operations.

33.    At all relevant times, by virtue of his role as owner and operator of the Entity Defendant, Brandt Bacus has had control over the Bacus Jimmy John's stores' pay policies.

34.     At all relevant times, by virtue of his role as owner and operator of the Entity Defendant, Brandt Bacus has had power over personnel and payroll decisions at the Bacus Jimmy John's stores, including but not limited to influence of delivery driver pay.

35.     At all relevant times, by virtue of his role as owner and operator of the Entity Defendant, Brandt Bacus has had the power to hire, fire and discipline employees, including delivery drivers at Bacus Jimmy John's stores.

36.     At all relevant times, by virtue of his role as owner and operator of the Entity Defendant, Brandt Bacus has had the power to stop any illegal pay practices that harmed delivery drivers at the Bacus Jimmy John's stores.

37.     At all relevant times, by virtue of his role as owner and operator of the Entity Defendant, Brandt Bacus has had the power to transfer the assets and liabilities of the Bacus Jimmy John's stores.

38.     At all relevant times, by virtue of his role as owner and operator of the Entity Defendant, Brandt Bacus has had the power to declare bankruptcy on behalf of the Bacus Jimmy John's stores.

39.     At all relevant times, by virtue of his role as owner and operator of the Entity Defendant, Brandt Bacus has had the power to enter into contracts on behalf of each of the Bacus Jimmy John's stores.

40.     At all relevant times, by virtue of his role as owner and operator of the Entity Defendant, Brandt Bacus has had the power to close, shut down, and/or sell each of the Bacus Jimmy John's stores.

41.     At all relevant times, by virtue of his role as owner and operator of the Entity Defendant, Brandt Bacus had authority over the overall direction of each of Bacus Jimmy John's stores and was ultimately responsible for their operations.

42.     The Bacus Jimmy John's stores function for Brandt Bacus' profit.

43.     Brandt Bacus has influence over how the Bacus Jimmy John's stores can run more profitably and efficiently.

**Jared Bacus**

44.     Jared Bacus is an owner and operator of Bacus Foods Corp., (the "Entity Defendant").

45.     Jared Bacus is a person who has entered into a franchise agreement with Jimmy John's to operate the Bacus Jimmy John's stores.

46.     Jared Bacus is the vice president of the Entity Defendant.

47.     Jared Bacus may command where, when, and how much labor is performed by the delivery drivers at the Bacus Jimmy John's stores.

48.     Jared Bacus is individually liable to the Bacus Jimmy John's stores delivery drivers under the definitions of "employer" set forth in the FLSA and Arizona law because he owns and operates the Bacus Jimmy John's stores, serves as a manager of the Entity Defendant, ultimately controls significant aspects of the Bacus Jimmy John's stores' day-to-day functions, and ultimately has control over compensation and reimbursement of employees.  29 U.S.C. § 203(d).

49.     At all relevant times, by virtue of his role as owner and operator of the Entity Defendant, Jared Bacus has had financial control over the operations at each of the Bacus Jimmy John's stores.

50.     At all relevant times, by virtue of his role as owner and operator of the Entity Defendant, Jared Bacus has a role in significant aspects of the Bacus Jimmy John's day to day operations.

51.     At all relevant times, by virtue of his role as owner and operator of the Entity Defendant, Jared Bacus has had control over the Bacus Jimmy John's stores' pay policies.

52.     At all relevant times, by virtue of his role as owner and operator of the Entity Defendant, Jared Bacus has had power over personnel and payroll decisions at the Bacus Jimmy John's stores, including but not limited to influence of delivery driver pay.

53.     At all relevant times, by virtue of his role as owner and operator of the Entity Defendant, Jared Bacus has had the power to hire, fire and discipline employees, including delivery drivers at Bacus Jimmy John's stores.

54.     At all relevant times, by virtue of his role as owner and operator of the Entity Defendant, Jared Bacus has had the power to stop any illegal pay practices that harmed delivery drivers at the Bacus Jimmy John's stores.

55.     At all relevant times, by virtue of his role as owner and operator of the Entity Defendant, Jared Bacus has had the power to transfer the assets and liabilities of the Bacus Jimmy John's stores.

56.     At all relevant times, by virtue of his role as owner and operator of the Entity Defendant, Jared Bacus has had the power to declare bankruptcy on behalf of the Bacus Jimmy John's stores.

57.     At all relevant times, by virtue of his role as owner and operator of the Entity Defendant, Jared Bacus has had the power to enter into contracts on behalf of each of the Bacus Jimmy John's stores.

58.     At all relevant times, by virtue of his role as owner and operator of the Entity Defendant, Jared Bacus has had the power to close, shut down, and/or sell each of the Bacus Jimmy John's stores.

59.     At all relevant times, by virtue of his role as owner and operator of the Entity Defendant, Jared Bacus had authority over the overall direction of each of Bacus Jimmy John's stores and was ultimately responsible for their operations.

60.     The Bacus Jimmy John's stores function for Jared Bacus' profit.

61.     Jared Bacus has influence over how the Bacus Jimmy John's stores can run more profitably and efficiently.

**Potential Additional Defendants**

62.     Upon information and belief, there are other individuals, entities, and/or limited liability companies that make up part of the Bacus Jimmy John's stores, and therefore qualify as "employers" because they are part of the organized group of individuals and entities that act directly or indirectly on behalf of the Bacus Jimmy John's stores in relation to Plaintiff and Plaintiff's similarly situated co-workers.

63.     Upon information and belief, the Bacus Brothers, in whole or in part, a number of these entities that make up part of the Bacus Jimmy John's stores.

64.     Upon information and belief other entities owned or operated in whole or in part by the Bacus Brothers may be liable for the claims asserted here.

65.     Upon information and belief, the franchisor, Jimmy John's, may also be liable as an employer of the delivery drivers employed at Bacus Jimmy John's stores.

66.     Upon information and belief, the Bacus Brothers have entered into co-owner relationships with a number of his executives and/or business partners, and those individuals might also qualify as "employers" of Plaintiff and the delivery drivers at the Bacus Jimmy John's stores as that term is defined by the FLSA and Arizona wage and hour laws.

67.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**III.    Facts**

**Class-wide Factual Allegations**

68.     During all or some of the relevant time period, Defendants operated the Bacus Jimmy John's stores.

69.     Upon information and belief, there are Bacus Jimmy John's stores located in Arizona, Kansas, Colorado, and Nebraska.

70.     The primary function of the Bacus Jimmy John's stores is to sell sandwiches and other food items to customers, whether they dine in, carry out, or have their food delivered.

71.     Some or all of the Bacus Jimmy John's stores employ delivery drivers (the "Bacus Jimmy John's delivery drivers" or "delivery drivers").

72.     All delivery drivers employed at the Bacus Jimmy John's stores over the last three years have had essentially the same job duties—deliver sandwiches and other food items to

customers, and complete various tasks inside the restaurant when they were not delivering sandwiches.

73.    All of the Bacus Jimmy John's delivery drivers work "dual jobs"—one where they deliver food and receive tips, and another where they work inside the store completing non-tipped duties.

74.    The Bacus Jimmy John's delivery drivers' non-tipped job duties were not related to their tipped job duties.

75.    The Bacus Jimmy John's delivery drivers' non-tipped job duties were not completed simultaneously with their tipped job duties.

76.    The Bacus Jimmy John's delivery drivers' inside duties included, but were not limited to, taking phone orders, helping carryout customers, preparing or wrapping sandwiches, doing dishes, cleaning in and around the store, and completing any other tasks necessary for the operation of the restaurant.

77.    The Bacus Jimmy John's delivery drivers have been paid an Arizona tipped wage rate for hours worked on the road making deliveries.

78.    The Bacus Jimmy John's delivery drivers have been paid an Arizona tipped wage rate for the hours they work inside the store.

79.    Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' sandwiches and other food items.

80.    Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile

maintenance and parts, insurance, financing, cell phone costs, GPS and data charges, and other equipment necessary for delivery drivers to complete their job duties.

81.      Pursuant to such requirements, Plaintiff and other similarly situated employees purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, paid for automobile financing, licensing, and registration, paid for storage costs, took time to oversee repairs, and incur cell phone and data charges all for the primary benefit of Defendants.

82.      Defendants reimbursed the delivery drivers based on a per mile rate, which failed to cover all of the delivery drivers' vehicle-related expenses.

83.      The Bacus Jimmy John's stores did not track or maintain records of the actual vehicle-related expenses of the delivery drivers.

84.      The Bacus Jimmy John's stores did not require delivery drivers to provide receipts of vehicle-related expenses incurred by delivery drivers.

85.      The Bacus Jimmy John's stores did not reimburse delivery drivers for their actual vehicle-related expenses.

86.      The Bacus Jimmy John's stores did not reimburse delivery drivers for their vehicle expenses at the IRS standard business mileage rate for each mile they drove.

87.      The Bacus Jimmy John's stores have not reimbursed delivery drivers at a reasonable approximation of the drivers' vehicle expenses.

88.      The Bacus Jimmy John's stores' vehicle expense reimbursement methodology did not fully reimburse delivery drivers for their expenses.

89.     The Bacus Jimmy John's stores' vehicle expense reimbursement methodology had no connection to the vehicle expenses incurred by delivery drivers.

90.     The Bacus Jimmy John's stores did not keep adequate records of the methodology and data they relied upon in determining their reimbursement rates.

91.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

     a.   2019: 58 cents/mile
     b.   2020: 57.5 cents/mile
     c.   2021: 56 cents/mile
     d.   2022 (January 2022 – June 2022): 58.5 cents/mile
     e.   2022 (July 2022 – December 2022): 62.5 cents/mile
     f.   2023: 65.5 cents/mile
     g.   2024: 67 cents/mile

92.     As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Arizona law.

93.     The delivery drivers' unreimbursed expenses amount to unauthorized deductions under the AMWA.

94.     By failing to adequately reimburse for their delivery drivers' vehicle expenses, the Bacus Jimmy John's stores have unlawfully withheld and/or diverted wages from the delivery drivers.

95.     Defendants have applied the same pay policies, practices, and procedures to all delivery drivers at their stores.

96.     All of Defendants' delivery drivers were subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; completed deliveries of

similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate before deducting unreimbursed vehicle costs.

97.     Because Defendants paid their delivery drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses and other job expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. See 29 C.F.R. § 531.35.

98.     By failing to adequately reimburse for delivery-related expenses, Defendants have taken unauthorized deductions from the wages of the delivery drivers.

99.     By failing to adequately reimburse for delivery-related expenses Defendants have failed to pay all wages due to the delivery drivers in a timely manner.

100.    Defendants have willfully failed to pay minimum wage to Plaintiff and similarly situated delivery drivers at the Defendants' Jimmy John's stores, have taken unauthorized deductions from the delivery drivers' wages, have withheld and/or diverted the delivery drivers' wages, have failed to pay the delivery drivers all wages due, and have been unjustly enriched by the delivery drivers' incurring automobile expenses solely for Defendants' benefit.

101.    Defendants have received a benefit by virtue of the delivery drivers using their own cars to complete deliveries—they do not have to incur the expense themselves.

102.    By requiring delivery drivers to provide the cars used to make deliveries for their business, Defendants avoid substantial risk and insurance costs that they would otherwise be required to cover.

103.    By requiring delivery drivers to provide the cars used to make deliveries for their business, Defendants have shifted the costs of running their business onto Plaintiff and similarly situated employees, reducing Defendants' overall expenses and operating costs.

104.    The delivery drivers have provided a benefit to Defendants in the form of saved automobile costs and related expenses.

105.    It is unjust for Defendants to retain the benefit conferred on them by their delivery drivers by reimbursing only a portion of the business-related costs incurred by the delivery drivers.

**Plaintiff's Individual Factual Allegations**

106.    Madeline Cota worked as a delivery driver at one of Defendants' Jimmy John's stores located in Tucson, Arizona from October 2022 through September 2023.

107.    Madeline Cota was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' sandwiches and other food items.

108.    Madeline Cota was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing, cell phone service, GPS service, and other equipment necessary to complete her job duties.

109.    Madeline Cota purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, financing, licensing and registration costs, and incurred cell phone and data charges all for the primary benefit of Defendants.

110.    Defendants did not track the actual expenses incurred by Madeline Cota.

111.    Defendants did not reimburse Madeline Cota based on her actual delivery-related expenses.

112.    Madeline Cota was not reimbursed at the IRS standard mileage rate for the miles she drove while completing deliveries.

113.    Defendants' reimbursement policy did not reasonably approximate the expenses incurred by Madeline Cota.

114.    During Madeline Cota's employment with Defendants, Defendants had failed to adequately reimburse Madeline Cota for automobile and other job-related expenses.

115.    Madeline Cota regularly made approximately 2 deliveries per hour during the hours she worked as a delivery driver.

116.    Plaintiff was reimbursed approximately $.20 per mile.

117.    In 2023, for example, the IRS business mileage reimbursement was $0.655 per mile. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. As such, every mile driven on the job decreased Plaintiff's net wages by approximately $.455 ($.655 - $.20) per mile. Considering her estimate of about 2 average miles per delivery, Defendants under-reimbursed her about $.91 per delivery ($.455 x 2 miles).

118.    Thus, while making deliveries (assuming 2 deliveries per hour), Madeline Cota has "kicked back" to Defendants approximately $1.82 per hour she worked on the road making deliveries ($.91 per delivery x 2 deliveries per hour).

119.    Madeline Cota worked dual jobs—one where she delivered food and received tips, and another where she worked inside the store completing non-tipped duties.

120. Plaintiff was paid $10.85 per hour for all hours worked, which is an Arizona tipped wage rate.

121. Madeline Cota's inside job duties were not related to her delivery job duties.

122. Madeline Cota's non-tipped job duties were not completed simultaneously with her tipped job duties.

123. Madeline Cota's inside duties included taking out trash, doing dishes, cleaning up around the store, boxing up orders, and other duties necessary for the operation of the restaurant.

124. As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Madeline Cota minimum wage as required by law.

125. Defendants improperly claimed a tip credit for the hours Madeline Cota worked in a non-tipped capacity inside the store.

126. Madeline Cota did not authorize Defendants to deduct a portion of her wages to cover automobile expenses that served Defendants' benefit.

127. By failing to reimburse Madeline Cota for all of her vehicle expenses, Defendants unlawfully withheld and/or diverted a portion of his wages.

## Collective Action Allegations

128. Plaintiff brings the First Count against the Defendants on behalf of herself and

All similarly situated current and former delivery drivers employed at the Bacus Jimmy John's stores nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action.

129. At all relevant times, Plaintiff and the FLSA collective class have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of

willfully refusing to pay Plaintiff and the FLSA collective class minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA collective class.

130.    Defendants' unlawful conduct is pursuant to a corporate policy or practice.

131.    Defendants are aware or should have been aware that federal law required them to reimburse delivery workers for expenses relating to "tools of the trade," such as, among other things, automobile costs and gasoline for delivery drivers.

132.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

133.    The FLSA collective class members are readily identifiable and ascertainable.

134.    For the purpose of notice and other purposes related to this action, the FLSA collective class members' names and contact information are readily available from Defendants' records.

135.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA collective classes, Plaintiff will request payment of a service award upon resolution of this action.

**Class Action Allegations**

136.    Plaintiff brings the Second and Third Counts, pursuant to Fed. R. Civ. P. 23, on behalf of herself and

> All current and former delivery drivers employed at the Bacus Jimmy John's stores owned, operated, and controlled by Defendants in Arizona, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter ("Rule 23 Arizona Wage Class").

137.    Plaintiff brings the Fourth Count, pursuant to Fed. R. Civ. P. 23, on behalf of herself and

All current and former delivery drivers employed at the Bacus Jimmy John's stores owned, operated, and controlled by Defendants in Arizona, during the four years prior to the filing of this Class Action Complaint and the date of final judgment in this matter ("Rule 23 Arizona Unjust Enrichment Class").

138.     Together, the Rule 23 Arizona Wage Class and Rule 23 Arizona Unjust Enrichment Class constitute the "Rule 23 Arizona Class"

139.     Excluded from the Rule 23 Arizona Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Pennsylvania Class.

140.     The number and identity of the Rule 23 Arizona Class members are ascertainable from Defendants' records.

141.     The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Arizona Class member and the benefits conferred by the Rule 23 Arizona Class members and realized by Defendants are determinable from Defendants' records.

142.     For the purpose of notice and other purposes related to this action, the Rule 23 Arizona Class members' names and contact information are readily available from Defendants.

143.     Notice can be provided by means permissible under Rule 23 for the Rule 23 Arizona Class members.

144.     The Rule 23 Arizona Class members are so numerous that joinder of all members is impracticable.

145.    The disposition of the Rule 23 Arizona Class members' claims as a class will benefit the parties and the Court.

146.    There are more than 50 Rule 23 Arizona Class members.

147.    Plaintiff's claims are typical of those claims which could be alleged by any class member in either the Rule 23 Arizona Class, and the relief sought is typical of the relief which would be sought by each Rule 23 Arizona Class member in separate actions.

148.    Plaintiff and the Rule 23 Arizona Class members have also unjustly enriched Defendants in the same way—by providing automobiles for use in their business at no cost to Defendants.

149.    Plaintiff and the Rule 23 Arizona Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

150.    Plaintiff and the Rule 23 Arizona Class sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

151.    By seeking to represent the interests of the Rule 23 Arizona Class members, Plaintiff is exercising and intends to exercise his right to engage in concerted activity for the mutual aid or benefit of herself and her co-workers.

152.    Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Arizona Class and has no interests antagonistic to the Rule 23 Arizona Class.

153.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

154.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of

minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Rule 23 Arizona Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Rule 23 Arizona Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in significant saving of these costs. The prosecution of separate actions by individual class members would create a risk of inconsistent and/or varying adjudications with respect to the individual Rule 23 Arizona Class members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of the Rule 23 Arizona Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

155.    Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions

provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

156.    This action is properly maintainable as a class action under Ohio Rule of Civil Procedure 23.

157.    The Rule 23 Arizona Wage Class and the Rule 23 Arizona Unjust Enrichment Class are properly treated as classes pursuant to Rule 23(c)(5).

158.    Common questions of law and fact exist as to the Rule 23 Arizona Wage Class that predominate over any questions only affecting Plaintiff and the Rule 23 Arizona Wage Class members individually and include, but are not limited to:

a.    Whether Plaintiff and the Rule 23 Arizona Class members were subject to a common expense reimbursement policy;

b.    Whether Plaintiff and the Rule 23 Arizona Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

c.    Whether Plaintiff and the Rule 23 Arizona Class members were subject to a common policy that required them to provide cellphones to use when completing deliveries for Defendants; and

d.    Whether Plaintiff and the Rule 23 Arizona Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

e.    Whether Defendants collected and maintained records of Plaintiff and the Rule 23 Arizona Class members' actual vehicle expenses;

f.    Whether Defendants reimbursed Plaintiff and the Rule 23 Arizona Class members for their actual expenses;

g.    Whether Defendants reimbursed Plaintiff and the Rule 23 Arizona Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

h.    Whether Defendants reimbursed Plaintiff and the Rule 23 Arizona Class members based on a reasonable approximation of the expenses they

22

incurred;

    i.    Whether Defendants properly reimbursed Plaintiff and the Rule 23 Arizona Class members;

    j.    Whether Defendants paid Plaintiff and the Rule 23 Arizona Wage Class members in a timely manner;

    k.    Whether Defendants took unlawful deductions from the pay of Plaintiff and the Rule 23 Arizona Wage Class members;

    l.    The nature and extent of class-wide injury and the measure of damages for those injuries.

159.    Common questions of law and fact exist as to the Unjust Enrichment Class that predominate over any questions only affecting Plaintiff and the Unjust Enrichment Class members individually and include, but are not limited to:

    a.    Whether Plaintiff and the Unjust Enrichment Class members are subject to a common policy that requires them to provide cars to complete deliveries for Defendants;

    b.    Whether Plaintiff and the Unjust Enrichment Class members are subject to a common automobile expense reimbursement policy;

    c.    Whether Plaintiff and the Unjust Enrichment Class incurs expenses for the benefit of Defendants in the course of completing deliveries;

    d.    Whether Defendants avoid business expenses they would otherwise be required to cover but for Plaintiff and the Unjust Enrichment Class providing cars to make deliveries;

    e.    How much it would cost Defendants to operate their business but for Plaintiff and the Unjust Enrichment Class providing cars to make deliveries;

    f.    Whether Plaintiff and the Unjust Enrichment Class confer a benefit on Defendants that Defendants are aware of;

    g.    Whether Defendants accept the benefits conferred on them by Plaintiff and the Unjust Enrichment Class;

h.  Whether it would be unjust for Defendants to retain the benefit conferred on them by Plaintiff and the Unjust Enrichment Class without compensating for it;

i.  The nature and extent of class-wide injury and the measure of damages for those injuries.

160.   In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Arizona Classes, Plaintiff will request payment of a service award upon resolution of this action.

## IV.   Causes of Action

### Count 1
### Failure to Pay Minimum and Overtime Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

161.   Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

162.   Plaintiff and the FLSA collective class members are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

163.   Plaintiff and the FLSA collective class members worked in dual jobs—one that produced tips, and another that did not.

164.   Defendants paid Plaintiff and the FLSA collective class members an hourly wage that is at, close to, or below (based on a tip credit) minimum wage for hours worked on the road making deliveries.

165.   Defendants required and continue to require Plaintiff and the FLSA collective class members to pay for automobile expenses and other job-related expenses out of pocket and failed to

properly reimburse Plaintiff and the FLSA collective class members for said expenses, resulting in underpayment of minimum and overtime wages.

166.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA collective class members.

167.    Plaintiff and the FLSA collective class members have been damaged by Defendants' willful failure to pay minimum wage as required by law.

168.    As a result of Defendants' willful violations, Plaintiff and the FLSA collective class members are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Minimum Wages – Arizona Minimum Wage Law, A.R.S. § 23-363**
**(On Behalf of Plaintiff and Rule 23 Arizona Class)**

169.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

170.    Defendants paid Plaintiff and the Arizona Rule 23 Wage Class below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

171.    Defendants ostensibly paid Plaintiff and the Arizona Rule 23 Wage Class at or close to Arizona minimum wage minus a tip credit for the hours they worked.

172.    Because Defendants required Plaintiff and the Arizona Rule 23 Wage Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed to pay Plaintiff and the Arizona Rule 23 Wage Class minimum wage.

173.    By not paying Plaintiff and the Arizona Rule 23 Wage Class at least minimum wage for each hour worked, Defendants have violated Arizona's minimum wage law.

174.    By failing to pay the tipped wage rate promised, Defendants have violated the tip credit rules under Arizona law and are not permitted to claim a tip credit.

175.    As a result of Defendants' violations, Plaintiff and the Arizona Rule 23 Wage Class are entitled to the balances of unpaid wages and unreimbursed expenses including interest thereon, an additional amount equal to twice the amount of unpaid minimum wages and unreimbursed expenses, and attorneys' fees and costs, as provided by A.R.S. § 23-364(G.).

### **Count 3**
### **Violation of the Arizona Wage Payment Law, A.R.S. § 23-350, *et seq.*** **(On Behalf of Plaintiff and the Arizona Rule 23 Wage Class)**

176.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

177.    The AMWA requires employers to pay their employees all wages earned by them during the semi-monthly or bi-weekly pay period. A.R.S. § 23-351(C).

178.    The AMWA prohibits employers from taking deductions from their employees' wages unless those deductions are required by law, made with the express written consent of the employee, or there is a reasonable good faith dispute as to the amount of wages due. A.R.S. § 23-352.

179.    The AMWA prohibits withholding a portion of an employee's wages for purposes of covering a business expense.

180.     Defendants provided no mechanism or procedure through which delivery drivers could submit supporting documentation of the expenses they incurred related to using their vehicles on Defendants' business.

181.     Because Defendants under-reimbursed the delivery drivers for their vehicle expenses, Defendants failed to pay Plaintiff and the Arizona Rule 23 Wage Class all wages earned by them during semi-monthly or bi-weekly pay periods, in violation of the AMWA.

182.     By requiring the delivery drivers to incur vehicle expenses to advance the business and not adequately reimbursing for those expenses, Defendants have taken unauthorized deductions and/or withholdings from the wages of the Arizona Rule 23 Wage Class and have failed to meet the requirements for reimbursing for employee expenses, in violation of the AMWA.

183.     Plaintiff and the Arizona Rule 23 Wage Class were entitled to be reimbursed for all necessary expenditures incurred within the scope of employment and directly related to the services performed for the employer.

184.     Defendants' practice of failing to pay Plaintiff and the Arizona Rule 23 Wage Class at the wage rate agreed to by the parties violated the AMWA.

185.     Plaintiff and the Arizona Rule 23 Wage Class are entitled to recover all the unpaid wages in violation of the AMWA made from their earned wages for a period of three years prior to the filing of this lawsuit.

186.     As a result of Defendants' violations of the AMWA, Plaintiff and the Arizona Rule 23 Wage Class, are entitled to an amount that is treble the amount of the unpaid wages. A.R.S. § 23-355.

**Count 4**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Rule 23 Unjust Enrichment Class)**

187.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

188.    The delivery drivers have transferred a benefit to Defendants by using their own cars to work for Defendants.

189.    Defendants are aware of and have accepted and retained the benefit transferred to them by the delivery drivers.

190.    It would be unjust for Defendants to be permitted to retain the benefit transferred to them by the delivery drivers without commensurate compensation.

191.    Plaintiff and the delivery drivers are entitled to receive the reasonable value of the benefits they have conferred on Defendants.

**WHEREFORE,** Plaintiff prays for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.    Unpaid minimum wages and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for Arizona state law claims.

D.      Designation of Plaintiff as representative of the Rule 23 Class of delivery drivers and counsel of record as Class Counsel.

E.      A declaratory judgment that the practices complained of herein are unlawful under the Arizona Minimum Wage Law and Arizona Wage Payment Law.

F.      An award of treble the amount of unpaid minimum wages and unreimbursed expenses due under A.R.S. §23-355.

G.      An award of treble the amount of unlawful deductions and/or withholdings due under A.R.S. §23-355.

H.      An award of equitable restitution and damages for unjust enrichment.

I.      An award of prejudgment and post-judgment interest.

J.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

K.      Such other legal and equitable relief as the Court deems appropriate.


Respectfully submitted,

/s/ Andrew P. Kimble
Andrew P. Kimble (*pro hac vice*)
Biller & Kimble, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 202-0710
akimble@billerkimble.com

**ATTORNEYS FOR PLAINTIFF**

## **JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ Andrew Kimble
Andrew Kimble